Ryan F. Stephan (will apply *pro hac vice*)
James B. Zouras (will apply *pro hac vice*)
Catherine T. Mitchell (will apply *pro hac vice*)
Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
rstephan@stephanzouras.com
jzouras2stephanzouras
cmitchell@stephanzouras.com

Daniel Bonnett (AZ#014127)
Jennifer Kroll (AZ#019859)
Michael Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia LeFever, individually and on behalf of all others similarly situated, | ) Case No: _____ )  )  PLAINTIFF'S CLASS ACTION AND |
| Plaintiff, | ) COLLECTIVE ACTION COMPLAINT ) |
| V. | ) (JURY TRIAL DEMANDED) ) |
| Fairway Independent Mortgage Corporation, | )  )  ) |
| Defendant. | )  ) |

Plaintiff, on behalf of herself and all other similarly situated employees, alleges:

Page **1** of **17**

*Plaintiff's Original Complaint—Class and Collective Action*

1. Plaintiff brings this action to redress Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Arizona wage statute, A.R.S. § 23-350 *et seq.,* ("AWS"), by knowingly failing to pay them all overtime premium wages for the overtime work they performed.

2. Plaintiff LeFever brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as Mortgage Loan Officers, or any similarly-titled position, for Defendant at any point during the maximum limitations period (the "FLSA Class").

3. Plaintiff LeFever brings her Arizona claims as a class pursuant to Fed. R. Civ. P. 23 for all Arizona residents who worked as Mortgage Loan Officers, or any similarly-titled position, for Defendant at any point during the maximum limitations period ("The Arizona Class").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that claims under the FLSA: "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's Arizona claim pursuant to 28 U.S.C. § 1367 because this claim arises from the same occurrence or transaction as Plaintiff's FLSA claim and is so related to this claim as to form part of the same case or controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff LeFever resides in this District, worked for Defendant in this District, Plaintiff and suffered the losses at issue in this District. Defendant has significant business contacts in this District, is alleged to have engaged in the wrongful conduct at issue in this District, and actions and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Patricia LeFever is a resident of Arizona who resides in Yavapai County. From July 2015 to April 2018, Plaintiff LeFever worked as a Mortgage Loan Officer for the Defendant in Prescott, Arizona, performing loan origination services in this District.  Defendant paid Plaintiff on an hourly basis, but failed to pay Plaintiff for all time worked beyond forty hours in given workweeks at the required time and one-half premium overtime compensation rate.  As a result, Plaintiff LeFever is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.

9. Plaintiff LeFever has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). *See* Consent Form (Exhibit A).

10. Fairway Independent Mortgage Corporation, ("Defendant") is a corporation with its headquarters located at 4750 S. Biltmore Lane in Madison, Wisconsin. Defendant's core business involves residential mortgage lending nationwide, and operates multiple branch locations throughout Arizona.  As discussed more fully below, Defendant is directly responsible for the operation of its residential mortgage lending business, and for the policies, practices, and conduct at issue in this case.

## BACKGROUND FACTS

11. This action arises out of Defendant's systematic, company-wide policy and practice of failing to pay Plaintiff and other similarly situated Mortgage Loan Officers all overtime compensation earned, as required by the FLSA and Arizona wage law. Specifically, pursuant to its common schemes, Defendants automatically deducted one hour per day for meal breaks, even though Plaintiff and putative class members often worked through such meal breaks without pay; and discouraged Plaintiff and class members from reporting time worked in excess of 40 hours per week, including time spent working at home in the evenings and on the weekends.

12. The affected employees worked for Defendant as Mortgage Loan Officers, Team Loan Officers, Senior Team Loan Officers, Loan Officer Assistants, Licensed Loan

*Plaintiff's Original Complaint—Class and Collective Action*

Originator Assistants, and in other similarly-designated positions (collectively "MLOs"), whose primary duties involved residential mortgage loan origination for Defendant's business.

13. Plaintiff was hired by Defendant as a non-exempt Team Loan Officer in April of 2015. From April of 2015 to on or about December 21, 2016, pursuant to Defendant's compensation scheme, Plaintiff was paid minimum wage for actual hours worked, plus commission, and a premium rate of overtime compensation—1½ times her hourly rate—for some hours worked in excess of forty (40) hours per work week. During this time, Plaintiff was discouraged from recording all overtime hours worked, and was not properly compensated for all hours worked in excess of forty (40) in any given workweek.

14. On December 21, 2016, Plaintiff was promoted to a Senior Team Loan Officer and received a raise and, pursuant to Defendant's compensation plan, was paid an hourly rate of $24.04 for the first forty (40) hours of work, plus commission. Plaintiff however, was instructed by Defendant (specifically Plaintiff's Branch Manager, Laurie Ashland Moore), to not record overtime hours worked in excess of forty (40) hours. Plaintiff's job duties and responsibilities did not change, and Plaintiff continued to be classified as non-exempt.

15. Plaintiff routinely worked more than forty (40) hours per week, including several hours on the weekends, originating and closing mortgage loans for Defendant, yet was not paid anything for her hours worked in excess of forty (40). Plaintiff typically worked from 8:15a.m. to 5:00p.m., Monday through Friday, as well as in the evenings for approximately 2-3 hours, and on the weekends for approximately 4-5 hours more.

16. Additionally, throughout the course of her employment, Plaintiff routinely worked through meal breaks, yet Defendant automatically deducted meal-break time from Plaintiff's actual hours worked. For example, Plaintiff typically worked from 8:15am to 5:00pm without a meal break, yet was only able to record time worked from 8:30am to

4:30pm. Plaintiff was not paid for time spent working through meal breaks which Plaintiff estimates to be approximately five (5) hours per week.

17. As demonstrated by Defendant's compensation plan, MLOs are encouraged to work more than forty (40) hours per week in order to be successful in performing their job duties and expectations, but discouraged from reporting such overtime worked. *See e.g.*, Plaintiff's 2016-2017 Compensation Plan §I (Exhibit B).

18. During the relevant statutory period, Defendant has maintained a common, company-wide scheme of failing and/or refusing to pay Plaintiff and other MLOs all overtime compensation earned, at the proper overtime premium rate, for hours worked in excess of forty (40) hours in any given workweek.

19. Defendant routinely suffered and permitted Plaintiff and its other MLOs to work more than forty (40) hours per workweek without proper overtime compensation, wrongly depriving these employees of legally-required overtime wages.

20. Defendant did not maintain accurate, contemporaneous records of all the hours Plaintiff and its other MLOs worked. Specifically, Defendant discouraged Plaintiff and other MLOs from recording time worked in excess of forty (40) hours per work week.

21. Defendant knew or should have known that Plaintiff and other MLOs were working more than forty (40) hours per week, because it assigned the work they performed; it encouraged them to work as many hours as necessary in order to be successful; and it tracked their performance of this work.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22. Plaintiff brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as MLOs for the Defendant at any point during the maximum limitations period (the "FLSA Class").

23. Plaintiff belongs to the FLSA Class she seeks to represent, because:
    a. She worked as an MLO for Defendant during the relevant period and had similar job duties and responsibilities as the other FLSA Class members;

b. She received the same training from Defendant and was required to comply with the same wage and hour policies;

c. Plaintiff and other MLOs were subjected to Defendant's automatic meal break deductions even though they often worked through such unpaid meal periods;

d. Plaintiff and other MLOs were encouraged to work overtime to perform their duties, but discouraged from reporting such overtime worked;

e. Plaintiff was subject to Defendant's compensation scheme that refused to pay Plaintiff and other MLOs overtime premium compensation for hours worked in excess of forty (40) hours per week;

f. Defendant routinely suffered and permitted Plaintiff to work more than forty hours per workweek;

g. Defendant routinely suffered and permitted Plaintiff to work through meal breaks without pay;

h. Defendant did not maintain accurate contemporaneous records of all the hours Plaintiff worked, particularly overtime hours worked;

i. Defendant knew Plaintiff was working more than 40 hours per week, because it assigned the work she performed, encouraged her to work as many hours as necessary in order to be successful, and tracked her performance of this work; and

j. Defendant did not pay Plaintiff overtime premium wages for all of the work she performed beyond forty (40) hours in any work week.

24. Although Plaintiff and the FLSA Class members may have worked in different states, and/or under different Branch Managers, this action may be properly maintained as a collective action because, among other things:

a. They are all non-exempt employees for purposes of the FLSA;

b. They worked under the same material terms and conditions of employment;

c. They were all paid pursuant to Defendant's uniform compensation scheme;

d. They performed the same job duties and had the same job-related responsibilities;

e. They received common training about their employment and the wage and hour policies and practices at issue here;

f. They were governed by the same timekeeping policies, practices and systems;

g. They were governed by the same compensation policies, practices and systems;

h. They were governed by the same policies, practices and systems concerning work hours and the performance of their work; and

i. They were governed by the same policies, practices and systems concerning overtime hours and wages.

25. Plaintiff estimates that the FLSA Class, including both current and former employees over the relevant period, will include hundreds of members. The precise number of FLSA Class members will be readily available from Defendant's personnel, time and payroll records, and from input received from the Class Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

## ARIZONA CLASS ACTION ALLEGATIONS

26. Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of herself and all other similarly situated MLOs who worked for the Defendant in Arizona at any point during the maximum limitations period (the "Arizona Class").

27. Plaintiff and other similarly situated MLOs all worked under common employment policies, were subject to the same compensation scheme, and were subject to the same practices challenged in this action as described above.

28. Plaintiff belongs to the Class she seeks to represent because she:

   a. Is a resident of Arizona;
   b. Worked under the same material terms and conditions of employment as the Arizona Class members;
   c. Performed the same job duties and had the same job-related responsibilities as the Arizona Class members;
   d. Received the same training about her employment and the wage and hour policies and practices at issue here as the Arizona Class members;
   e. Was governed by the same timekeeping policies, practices and systems as the Arizona Class members;
   f. Was governed by the same compensation policies, practices and systems as the Arizona Class members;
   g. Was subjected to the same automatic meal break deduction policy and practice as the Arizona Class Members;
   h. Was governed by the same policies, practices and systems concerning work hours and the performance of their work as the Arizona Class members;
   i. Was governed by the same policies, practices and systems concerning overtime hours and wages as the Arizona Class members; and
   j. Was not timely paid all wages she was owed as required by the AWS.

**Class Definition**

29. Plaintiff seeks certification of an Arizona Class consisting of the following individuals:

> All individuals who currently work, or have worked, for Defendant as a Mortgage Loan Officer, or any similarly-titled position, in Arizona, within the applicable statute of limitations and were not paid all wages owed as required the Arizona law.[1]

### **Numerosity**

30. More than 40 MLOs were employed by Defendant in Arizona who were subject to the same practices challenged in this action as alleged above and not paid overtime compensation for all time worked in excess of 40 hours in given workweeks. Accordingly, Plaintiff satisfies the numerosity requirement, as the Arizona Class is so numerous that joinder of all members is impracticable.

31. Members of the proposed Arizona Class can be identified and located using Defendant's payroll and personnel records. Members of the Arizona Class may be informed of the pendency of this action by direct mail, electronic mail, text message, and/or published and broadcast notice.

### **Common Questions of Fact or Law**

32. There are questions of fact and law common to the Arizona Class members which predominate over questions affecting only individual members, if any. Plaintiff, the members of the Arizona Class, and Defendant have a commonality of interest in the subject matter and the remedy sought, namely; recovery of all unpaid wages due them under Arizona state law.

33. If individual actions were required to be brought by each member of the Arizona Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Court, the Arizona Class, and to the Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Arizona Class is entitled.

### **Typicality**

---

[1] Plaintiff reserves the right to propose a different class definition or include sub-classes, if appropriate, after the completion of discovery. Further, in Arizona, the statute of limitations period for unpaid wages (other than failure to pay minimum wages) is one year. A.R.S. § 12-541.

34. Plaintiff's claims are typical of the claims of the Arizona Class's members. As a result of Defendant's unlawful conduct, Plaintiff suffered similar injuries as those suffered by other members of the Arizona Class she seeks to represent.

### Adequacy

35. Plaintiff is an adequate representative of the Arizona Class she seeks to represent because she is a member of the Arizona Class, and her interests do not conflict with the interests of the other members of the Arizona Class. The interests of each Arizona Class member will be fairly and adequately protected by Plaintiff and her undersigned counsel. Plaintiff has hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

### Superiority

36. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable given that, among other reasons, Defendant operates multiple locations throughout Arizona. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

37. Moreover, as the damages suffered by each Arizona Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each Arizona Class member to bring individual claims.

38. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of each Arizona Class member to protect his or her interests.

**COUNT I**
**FAIR LABOR STANDARDS ACT, § 207**
**DEFENDANT'S FAILURE TO PAY EARNED OVERTIME**

39. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

40. Defendant is an "Employer" as defined by 29 U.S.C. § 203(d).

41. The wages Defendant paid to Plaintiff LeFever and the FLSA Class members are "wages" as defined by 29 U.S.C. § 203(m).

42. Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

43. Plaintiff LeFever and the FLSA Class members are "employees" as defined by 29 U.S.C. § 203(e)(1).

44. Plaintiff LeFever and the FLSA Class members are similarly-situated individuals within the meaning of 29 U.S.C. §216(b).

45. 29 U.S.C. § 207(a)(1) provides that, with certain exceptions not applicable here, non-exempt employees must be paid an overtime premium rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of forty (40) hours per week.

46. 29 U.S.C. § 211(c) expressly requires employers to maintain accurate time records of the work performed by their employees.

47. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employers' failure to comply with its requirements.

48. Throughout the relevant period, Defendant was obligated to comply with the FLSA's requirements, Plaintiff LeFever and the FLSA Class members were covered employees entitled to the FLSA's protections, and Plaintiff LeFever and the FLSA Class members were wrongfully deprived of earned overtime wages, as required by the FLSA.

49. Defendant willfully violated the FLSA as described herein by knowingly failing to compensate Plaintiff LeFever and the FLSA Class for all overtime hours worked at the proper overtime premium rate.

50. Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions as described herein by knowingly suffering or permitting

Plaintiff LeFever and the FLSA Class members to regularly work more than forty (40) hours per week without ensuring they were paid at an overtime premium rate for all hours beyond forty (40).

51. Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions as described herein by knowingly failing to create or maintain accurate records of the time Plaintiff LeFever and the FLSA Class members worked.

52. Plaintiff LeFever and the FLSA Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime wages owed for work they performed from which Defendant derived a direct and substantial benefit.

53. Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff LeFever and the FLSA Class members all wages mandated by the FLSA.

54. As a result of Defendant's violations of the FLSA, Plaintiff LeFever and other members of the FLSA Class have suffered harm and are entitled to recoup their unpaid overtime wages, prejudgment interest to the extent allowed and liquidated damages together with reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**ARIZONA WAGE STATUTE**
**FAILURE TO PAY OVERTIME WAGES**

55. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

56. Plaintiff LeFever and other similarly situated MLOs that currently work or worked for Defendant in Arizona during the applicable statute of limitations period (the "Arizona Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57. The unpaid wages at issue in this litigation are "wages" as defined by A.R.S.

§ 23-350.

58. Defendant is an "employer" as defined in A.R.S. § 23-350.

59. Plaintiff LeFever and the Arizona Class members are "employees" as defined by A.R.S. § 23-350.

60. A.R.S. §23-351(A) provides, in relevant part, that employers must designate "two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees."

61. A.R.S. § 23-351(C) provides, in relevant part, that employers must pay employees all wages due to the employee on each regular payday.

62. A.R.S. § 23-351(C)(3) further provides, "Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

63. A.R.S. § 23-352 provides, in relevant part:

"No employer may withhold or divert any portion of an employee's wages unless one of the following applies:

1. The employer is required or empowered to do so by state or federal law.

2. The employer has prior written authorization from the employee. An employer shall not withhold wages under a written authorization from the employee past the date specified by the employee in a written revocation of the authorization, unless the withholding is to resolve a debt or obligation to the employer or a court orders otherwise.

3. There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee."

64. A.R.S. § 23-355(A) provides that if an employer, in violation of the AWS, fails to timely pay wages due, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of unpaid wages.

65. A.R.S. § 23-355 expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the AWS's requirements.

66. Throughout the relevant period, Defendant was obligated to comply with the AWS's requirements, Plaintiff LeFever and the Arizona Class members were covered employees entitled to the AWS's protections, and Plaintiff LeFever and the Arizona Class members were not exempt from receiving wages required by the AWS for any reason.

67. Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions as described herein by knowingly withholding from Plaintiff LeFever and the Arizona Class members overtime wages, in violation of the AWS, including the failure of Defendant to properly pay Plaintiff LeFever and the Arizona Class all wages due.

68. Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions as described herein by knowingly failing to create or maintain accurate records of all of the time Plaintiff LeFever and the Arizona Class members worked.

69. Plaintiff LeFever and the Arizona Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

70. As a result of Defendant's violations of the AWS, Plaintiff LeFever and other members of the Arizona Class have suffered harm and are entitled to recoup their unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with reasonable attorneys' fees and costs, pursuant to A.R.S. § 23-355.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, by and through her attorneys, demands judgment against Defendant, and in favor of the Plaintiff and all others similarly situated, for a sum that will properly, adequately, and

completely compensate Plaintiff and all others similarly situated for the nature, extent, and duration of their damages, the costs of this action, and as follows:

    a.    approve this matter to proceed as a collective action with respect to Count I;

    b.    approve this matter to proceed as a class action with respect to Count II;

    c.    appoint Stephan Zouras, LLP and Martin & Bonnett, P.L.L.C. to serve as Class and Collective Counsel;

    d.    award judgment in favor of Plaintiff LeFever and against Defendant for an amount equal to Plaintiff LeFever's and the FLSA Class members' unpaid overtime compensation;

    e.    award judgment in favor of Plaintiff and against Defendant for an amount equal to Plaintiff's and Class members' unpaid wages pursuant to the applicable wage rates under Arizona's state law;

    f.    declare that Defendant's violations of the FLSA and Arizona wage and hour laws were willful and in the absence of a good faith dispute;

    g.    award Plaintiff LeFever and members of the FLSA Class liquidated damages in accordance with the FLSA;

    h.    award Plaintiff and members of the Arizona Class treble damages in accordance with Arizona statutory provisions;

    i.    award prejudgment interest for the FLSA claims (to the extent that liquidated damages are not awarded);

    j.    award prejudgment interest for all state-law statutory wage claims (even if liquidated damages are awarded);

    k.    certify this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure and certify the Arizona Class set forth above;

    l.    award punitive damages to Plaintiff and the Arizona Class to the extent permitted by the Arizona law;

    m.    declare and find that Defendant willfully violated all applicable record keeping statutes;

*Plaintiff's Original Complaint—Class and Collective Action*

n. issue all appropriate injunctive relief to prevent Defendant from violating the applicable and respective state-law statutory obligations, with ongoing oversight and continuing jurisdiction of the Court as needed, including requiring Defendant to pay for an audit of its record-keeping system;

o. award Plaintiff LeFever reasonable attorneys' fees and all costs of the collective action, to be paid by Defendant, in accordance with the FLSA;

p. award Plaintiff reasonable attorneys' fees and all costs of the Arizona Class action, to be paid by Defendant, in accordance with each applicable State's law;

q. award pre- and post-judgment interest and court costs as further allowed by law;

r. award a reasonable service award for Plaintiff to compensate her for the time and effort spent protecting the interests of other MLOs, and the risks she has undertaken;

s. grant Plaintiff and the Arizona Class leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

t. provide additional general and equitable relief to which Plaintiff and the Arizona Class may be entitled; and,

u. provide further relief as the Court deems just and equitable.

Dated: November 16, 2018                Respectfully submitted,

By: */s/ Ryan F. Stephan*
Ryan F. Stephan (will apply *pro hac vice*)
James B. Zouras (will apply *pro hac vice*)
Catherine T. Mitchell (will apply *pro hac vice*)
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550
(312) 233-1560 *f*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: */s/ Daniel Bonnett*
Daniel Bonnett
Jennifer Kroll
Michael Licata
MARTIN & BONNETT, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Tel: (602) 240-6900

*Attorneys for Plaintiff and the Putative Class*