**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia LeFever,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Fairway Independent Mortgage Corporation,<br><br>　　　　　Defendant. | No. CV-18-08326-PCT-DJH<br><br>**ORDER** |

Before the Court is Defendant Fairway Independent Mortgage Corporation's ("Fairway") Motion to Compel Arbitration and Dismiss Without Prejudice (Doc. 21). Plaintiff Patricia LeFever ("Plaintiff") filed a Response[1] (Doc. 29) and Fairway filed a Reply (Doc. 32).

**I.　BACKGROUND**

On November 16, 2018, Plaintiff filed a "Class Action and Collective Action Complaint" pursuant to the Fair Labor Standards Act ("FLSA"), individually and on the behalf of other similarly situated employees, alleging that Fairway had a policy and practice of failing to pay overtime wages. (Doc. 1 ¶¶ 1-3, 11). Plaintiff worked for Fairway from July 2015 to April 2018 as a Mortgage Loan Officer. (*Id.* ¶ 8). While Plaintiff worked for Fairway, she was given Fairway's Employee Handbook ("Employee Handbook") on at least three separate occasions and acknowledged, in writing, that she

---

[1] Plaintiff's request for oral argument is denied because the parties have had an opportunity to adequately brief the issues and oral argument would not aid in the Court's resolution of this Motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

read, understood and agreed to the policies contained in the Employee Handbook. (Doc. 21 at 1-2; Doc. 29-2 at 72; Doc. 32-1 at 34, 68). The Employee Handbook was periodically updated to reflect new policies or amendments to existing policies; however, the Employee Handbook provided that the Arbitration Policy would not be amended without advanced written notice to employees of the proposed changes. (Doc. 29-2 at 72; Doc. 32-1 at 34, 68). The Employee Handbook,[2] which had been most recently revised on January 1, 2018, contained the following arbitration policy:

> In the event that any employment-related dispute or disagreements arises between a current or former Fairway employee and Fairway, it is Fairway's policy to make every effort to informally meet with the current or former employee and settle any disputes in good faith. If no agreement or a written settlement is reached between the Fairway employee and Fairway within sixty (60) days after the employment-related dispute or disagreement arises, or within a longer period to which both Fairway and the current or former employee mutually agree, then the parties agree the matter in controversy shall be settled by arbitration in accordance with this Arbitration Policy. With the exception of employees in Illinois, Indiana, and Wisconsin, current or former employees are not entitled to assert representative or class claims.
>
> Any employment-related controversy, dispute or claim between a current or former Fairway employee and Fairway, except as set out below, shall be settled by final and binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association. Each party has the right to pursue the same causes of action and obtain the same damages in arbitration that they could pursue in any court. The effect of this policy is that *both the current or former Fairway employee and Fairway are waiving their right to file a lawsuit in court against the other party*. Any arbitration brought under the terms of this Arbitration Policy shall be conducted in the following manner
>
> a) **Notice** - A party wishing to pursue a claim under this Arbitration Policy must give the other party <u>written Notice of Claim within one (1) year after the disputed event occurs</u>, unless a specific applicable statute of limitation provides for a longer period for pursuing a claim. <u>Within thirty (30) days after</u> receiving a notice of claim a party shall serve the other party with a <u>written response</u>.

---

[2] Plaintiff provided the entire Employee Handbook as Exhibit B to her Response. (Doc. 29-2).

b) **Mediation** - If the party initiating the claim is not satisfied with the response, the parties shall in good faith participate in a <u>non-binding mediation within 60 days</u> to attempt to resolve the dispute. The parties shall cooperate in selecting the mediator and the time and date of the mediation. If the dispute is not resolved at mediation, then it shall proceed to an arbitration hearing.

c) **Arbitration** - The parties may agree on an arbitrator or select an arbitrator through the American Arbitration Association. The arbitration location will be determined on a case-by-case basis and agreed to by the parties.
  1) The arbitrator shall follow the Employment Arbitration Rules of the American Arbitration Association, except as otherwise agreed by the parties. The arbitrator shall comply with the rules of evidence and substantive law of the state in which the arbitration is held, rule on any discovery disputes; provide for the exchange of witness lists and copies of exhibits, conduct a pretrial hearing, and have the authority to grant dispositive motions. Each party shall have the right to request the arbitrator to make findings of specific factual issues. The arbitrator may grant or limit discovery as the arbitrator deems appropriate considering the nature of the dispute and the number of witnesses and documents.
  2) The decision of the arbitrator shall be <u>final and binding</u> upon the parties, and the current or former Fairway employee and Fairway shall promptly comply with the terms of such award. Any deviation from subparagraphs (a) through (c) above must be set out in writing and signed by both the parties.

This Arbitration Policy does not prohibit a current or former employee from filing an administrative claim before the Equal Employment Opportunity Commission (EEOC), the Department of Labor (DOL), the National Labor Relations Board (NLRB), or any parallel state or local agency. However, upon receipt of a right to sue letter or similar administrative determination from any such agency, relinquishing the agency's jurisdiction over the employee's claim, the claim then becomes a covered dispute subject to arbitration under this Arbitration Policy.

This Arbitration Policy does not apply to claims for workers' compensation, unemployment compensation benefits or claims by Fairway involving the enforcement of a current or former employee's obligations regarding Fairway's Confidentiality Agreement and Non-Solicitation Agreement.

Any current or former employee who continues to work or worked for Fairway Independent Mortgage Corporation after the effective date of this policy will be deemed to have consented to this policy. The effective date of

this policy is August 1, 2004.

("Arbitration Policy"). (Doc. 29-2 at 17-18) (alterations in original)). The Arbitration Policy and its corresponding page number were listed in the Employee Handbook's Table of Contents. (*Id.* at 4). On January 5, 2018, after receipt of the Employee Handbook, Plaintiff electronically signed the following acknowledgement form:

> I understand that the policies and guidelines in the Handbook supersede those previously written or communicated and that Fairway reserves the right to change its policies and guidelines or their application as it deems appropriate, with or without notice, except in regard to the Arbitration Policy. Fairway will provide advance written notice to employees of any proposed change to the Arbitration Policy and any change to the Arbitration Policy will not affect any pending claim. I also understand that it is my responsibility to read the information contained in the Handbook. I agree it is my responsibility to seek clarification from my branch manager/supervisory or Human Resources on any policy, procedure, or workplace practice outlined in the Handbook that I do not understand.
> 
> …
> 
> By signing my name below, I acknowledge, understand, accept, and agree to comply with the policies and guidelines contained in the Handbook. . . . I also understand that the Handbook is not a contract of employment and should not be deemed as such and that I am an "employee-at-will," meaning that either Fairway or I may terminate my employment with Fairway at any time with or without cause or notice.
> 
> …
> 
> By signing my name below, I hereby acknowledge the Employee Handbook and the policies listed above.

("Acknowledgement Form") (*Id.* at 72-73).

## II.    LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(1) challenges the plaintiff's assertion that the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Doe v. Schachter*, 804 F. Supp. 53, 56 (N.D. Cal. 1992). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision." *Cancer Center Assocs. for Research and Excellence, Inc. v. Philadelphia Ins.*

*Cos.*, 2015 WL 1766938, at *3 (E.D. Cal. April 17, 2015) (citing *Filimex, L.L.C. v. Novoa Invs., L.L.C.,* 2006 WL 2091661, at *2 (D. Ariz. July 17, 2006)).

"With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. §§ 1, *et seq.*). "[T]he party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014). Although a contract may contain a choice-of-law provision that governs the contract's construction, "[t]he scope of an arbitration clause is governed by federal substantive law." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

While the scope of the arbitration provision is determined by applying federal law, whether there is a valid agreement to arbitrate is determined "by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Agreements to arbitrate may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Absent a valid contract defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties

to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The FAA reflects both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Kramer*, 705 F.3d at 1126 (internal citations and quotations omitted). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma*, 560 F.3d 935, 940 (9th Cir. 2009). Absent unmistakably clear language to the contrary, arbitration should be ordered unless it can be said that the arbitration provision is not susceptible of an interpretation that covers the asserted dispute. *Moses*, 460 U.S. at 24–25.

## III.   DISCUSSION

Fairway asserts that the Employee Handbook's Arbitration Policy requires Plaintiff to individually arbitrate her claims. In response, Plaintiff contends that she did not assent to the Arbitration Policy; however, she does not appear to dispute that, if the Arbitration Policy is enforceable, the claims asserted in her Complaint would be subject to arbitration. (Doc. 29). Accordingly, the Court need only decide whether a valid agreement to arbitrate exists. *See Chiron*, 207 F.3d at 1130.

When determining whether parties have agreed to arbitrate, courts apply ordinary state law contract-formation principles. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). The parties agree that Arizona law governs. (Doc. 21 at 6 n.2; Doc. 29 at 4). Fairway argues that the parties entered into a valid arbitration agreement to arbitrate all employment-related disputes because Plaintiff signed the Employee Handbook's Acknowledgement Form, therefore she "acknowledge[d], underst[ood], accept[ed], and agree[d] to comply with" the Arbitration Policy. (Doc. 21 at 5-8). Plaintiff, however, contends that there is no valid arbitration agreement because: (1) she did not assent to the Arbitration Policy because it was "hidden" within the Employee Handbook and (2) the

Employee Handbook was not a contract because the cover page contained a disclaimer that stated that "[n]othing in this Employee Handbook is intended to create any binding contractual commitments between Fairway and any of its employees . . . ." (Doc. 29 at 4-9). Plaintiff also argues that the Arbitration Policy is procedurally unconscionable. (*Id.* at 9-10).

### A. Effect of the Disclaimer

Plaintiff argues that the Arbitration Policy is not enforceable due to disclaimer language located on the cover page of the Employee Handbook. The Court disagrees. The disclaimer, in its entirety states,

> This Employee Handbook nor any other communication by a management representative, either written or oral, made at the time of hire or during the course of employment is intended in any way to create, nor should be construed to create, an employment contract between Fairway and any employee, unless specifically approved in writing by a member of Fairway's Executive Committee. Specifically, no manager, agent, or employee, with the exception of members of the Executive Committee, have authority to enter into any contract with an employee or otherwise alter the at will nature of an employee's employment relation with Fairway. Moreover, this Employee Handbook should not be construed as a guarantee of employment for any specific period of time or any specific type of work. All assignments and continued employment will depend on Fairway determination in its absolute discretion of a need for an employee's continued services. Nothing in this Employee Handbook is intended to create any binding contractual commitments between Fairway and any of its employees, unless otherwise specifically stated in another agreement signed by a member of the Executive Committee.

(Doc. 29-2 at 2). Thus, although the disclaimer provides that "[n]othing in this Employee Handbook is intended to create any binding contractual commitments between Fairway and any of its employees," that exclusion of contractual obligations, when read in context, applies to the at-will employment relationship between Plaintiff and Fairway. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 Fed. Appx. 430, 431 (9th Cir. 2015) (holding that language disclaiming a "contract for employment" in a section concerning at-will employment does not eliminate the existence of an employment contract in its entirety).

As the Ninth Circuit explained in *Ashbey*, accepting Plaintiff's argument would "create an absurdity" because then Plaintiff would also have no means to enforce the provisions of the Employee Handbook that outline sick leave, paid time off, and benefit eligibility, among others. *See* 612 Fed. Appx. at 431. The fact that the Employee Handbook did not create an employment contract—in that it does not create an exception to at-will employment—does not mean that it did not create a valid arbitration agreement. *See Batiste v. U.S. Veterans Initiative*, 2012 WL 300729, at *1 (D. Ariz. Feb. 1, 2012) (enforcing an arbitration agreement contained in an employee handbook, reasoning that "[i]t can . . . be fairly inferred that [p]laintiff understood that by accepting employment with [d]efendant, the Employee Handbook governed the terms of his employment."). Accordingly, the Court finds that the disclaimer does not otherwise void the arbitration agreement between Plaintiff and Fairway.

### B.      **Plaintiff's Assent to the Arbitration Policy**

Plaintiff asserts that she did not assent to Fairway's Arbitration Policy because: (1) it was "hidden" in the Employee Handbook, and (2) the Arbitration Policy must be presented separately from the Employee Handbook and separately acknowledged to be enforceable. (Doc. 29 at 4-6). The crux of these arguments is that Plaintiff did not receive notice of the Arbitration Policy contained in the Employee Handbook; therefore, she could not have knowingly agreed to arbitrate her claims. The Court is unpersuaded for several reasons.

First, the Court disagrees with Plaintiff's characterization that the Arbitration Policy was "hidden" within the Employee Handbook. The Arbitration Policy was listed in the Table of Contents and mentioned three times in the two-page Acknowledgement Form, which Plaintiff electronically signed. (Doc. 29-2 at 72). Thus, the references to the Arbitration Policy contained in Acknowledgement Form and the Table of Contents was sufficient to alert Plaintiff that the Employee Handbook contained an Arbitration Policy. Moreover, Plaintiff, by signing the Acknowledgement Form, acknowledged that it was her "responsibility to read the information contained in the Handbook" and agreed to comply

with those policies. Plaintiff's decision to not thoroughly read the Acknowledgement Form or the Employee Handbook does not invalidate the contract. *See DMARC 2006-CD2 Indian Sch., LLC v. Bush Realty At Steele Park, LLC*, 2016 WL 7209656, at *2 (Ariz. Ct. App. Dec. 13, 2016) ("A party's failure to read a contract that he has signed is not in and of itself grounds to invalidate the writing."); *see also Pinto v. USAA Ins. Agency Inc. of Texas (FN)*, 275 F. Supp. 3d 1165, 1169 (D. Ariz. 2017) (rejecting the plaintiff's argument that he never agreed to the arbitration provision, reasoning that there was sufficient evidence that the plaintiff was made aware of the arbitration provision because he acknowledged that it was his "responsibility to read and comply" with all of the policies in the employer's handbook).

Additionally, to the extent that Plaintiff argues that she was required to be presented with and acknowledge the Arbitration Policy separate and apart from the Employee Handbook for it to be enforceable, Plaintiff is incorrect. Plaintiff ignores the references to the Arbitration Policy in the Acknowledgement Form and the Table of Contents, as well as her clear acknowledgement that it was her responsibility to read the policies and seek clarification on the policies in the Employee Handbook. Plaintiff identifies no authority to support her argument. To the contrary, in Arizona, courts have found that an employee's acknowledgement that it was the employee's responsibility to read and comply with the policies contained in the employee handbook is sufficient to enforce the arbitration agreement contained in that handbook. *See Pinto*, 275 F. Supp. 3d at 1169 (enforcing an arbitration agreement contained in an employee handbook based solely on the fact that the employee had acknowledged in writing that it was his responsibility to read and comply with those policies); *Nowak v. USVETS Inc.*, 2014 WL 1319299, at *4 (D. Ariz. Apr. 1, 2014) (holding that the arbitration provision contained in the employee handbook was enforceable).

Accordingly, the circumstances here permit the Court to find that Plaintiff understood that by signing the Acknowledgement Form and continuing to work for Fairway, she was assenting to the policies contained in the Employee Handbook, whether

or not she chose to read those policies. *See Batiste v. U.S. Veterans Initiative*, 2012 WL 300729, at *1 (D. Ariz. Feb. 1, 2012) (enforcing an arbitration agreement contained in an employee handbook, reasoning that "[i]t can . . . be fairly inferred that Plaintiff understood that by accepting employment with Defendant, the Employee Handbook governed the terms of his employment."). Under Arizona law, this is sufficient to subject Plaintiff to the Arbitration Policy contained in the Employee Handbook.

### C. **Procedurally Unconscionable**

Unconscionability is a generally applicable contract defense that may render an arbitration provision unenforceable under the FAA, *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), and is determined according to the laws of the state of contract formation, *Chalk*, 560 F.3d at 1092. Under Arizona law, the plaintiff bears the burden of proving the unenforceability of the arbitration provision, and the determination of unconscionability is made by the Court as a matter of law. *Maxwell v. Fidelity Financial Services, Inc.*, 907 P.2d 51, 56 (Ariz. 1995); *Taleb v. AutoNation USA Corp.*, 2006 WL 3716922, at *2 (D. Ariz. Nov. 13, 2006) ("Because a court order compelling arbitration is the functional equivalent of a summary disposition on the issue of the enforceability of the Arbitration Agreement, the burden is properly upon the plaintiff to produce specific facts showing that . . . a triable issue exists.").

Here, Plaintiff argues that the Arbitration Policy is procedurally unconscionable because (1) she did not have an opportunity to negotiate the terms of the policy and (2) that the Arbitration Policy was "hidden" within the Employee Handbook and she did not "explicitly sign off on having read, understood and agreed to [Fairway's] arbitration provision." (Doc. 29 at 10). The Court disagrees. Procedural unconscionability arises from unfairness in the bargaining process. It "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 907 P.2d at 56.

As previously discussed, the Arbitration Policy was not "hidden" within the Employee Handbook. Plaintiff was alerted to the Arbitration Policy because it was

referenced in the Acknowledgment Form and listed in the Table of Contents and she had an opportunity to review the Arbitration Policy and the Employee Handbook. That she chose not to do so, does not render Arbitration Policy a product of a procedurally unconscionable process.

Additionally, notwithstanding the signed Acknowledgement Form, Plaintiff contends that Arbitration Policy is procedurally unconscionable because she did not have an opportunity to negotiate the terms of the policy. The Court is unpersuaded. Plaintiff does not allege, or otherwise indicate, that she sought to negotiate any of the terms of her employment outlined in the Employee Handbook, or that the terms were oppressive. Instead, Plaintiff signed and returned the Acknowledgement Form despite her apparent unawareness of the Employee Handbook's content and her inability to negotiate its terms. In light of the entire record, which includes no allegation that the Arbitration Policy was non-negotiable, the Court finds that Plaintiff has not shown facts sufficient to support a procedural unconscionability finding.

### IV. CONCLUSION

The FAA provides that, upon determining that an issue in a pending action is subject to a mandatory arbitration provision, a federal court "shall . . . stay the action until such arbitration has been had." 9 U.S.C. § 3. "Notwithstanding this statutory language . . . the majority of courts . . . have held that a stay serves no obvious purpose and dismissal is appropriate where the entire controversy between the parties is subject to and will be resolved by arbitration." *Altela Inc. v. Arizona Sci. & Tech. Enterprises LLC*, 2016 WL 4539949, at *8 (D. Ariz. Aug. 31, 2016); *see also Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of case where all claims were subject to arbitration). Having concluded that arbitration should be compelled, the Court must now consider whether to stay or dismiss this action. *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (holding that when a court "determines that all of the claims raised in the action are subject to arbitration," the court "may either stay the action or dismiss it outright.").

Plaintiff signed the Employee Handbook's Acknowledgement Form and Plaintiff has not shown that the Arbitration Policy contained in the Employee Handbook is unconscionable or otherwise unenforceable. The Court accordingly finds that a valid arbitration agreement exists. Because the Arbitration Policy provides for mandatory arbitration of "[a]ny employment-related controversy, dispute or claim between a current or former Fairway employee and Fairway[,]" Plaintiff's FLSA claim is clearly covered. (Doc. 1; Doc. 29-2 at 17). The Court will therefore dismiss this case.

Accordingly,

**IT IS ORDERED** that Defendants' Rule 12(b)(1) Motion to Compel Arbitration Pursuant to the Federal Arbitration Act, and to Dismiss or Stay this Litigation (Doc. 5) is **GRANTED**. This action is dismissed without prejudice.

**IT IS FURTHER ORDERED** respectfully directing the Clerk of Court to enter judgment accordingly.

Dated this 31st day of October, 2019.

_____
Honorable Diane J. Humetewa
United States District Judge